Will WILSON, Attorney General, et al.,
Appellants,

v.

STATE BOARD OF NATUROPATHIC EX-
AMINERS et al., Appellees.

No. 10447.

Court of Civil Appeals of Texas.

Austin.

Jan. 30, 1957.

Rehearing Denied Feb. 20, 1957.

John Ben Shepperd, Atty. Gen., John
Reeves, Asst. Atty. Gen., for appellants.

J. A. Collier, A. H. Krichamer, Houston,
Joe Lee Hensley, San Antonio, for appel-
lees.

HUGHES, Justice.

The facts of this case are stated in the
pleadings and are agreed to be correct.

The sole question of law presented is
the constitutionality, vel non, of Article
4590d,[1] V.A.C.S., known as the Naturo-
pathic Act.

This suit for declaratory judgment was
against the Attorney General and Comp-
troller of the State of Texas and was
brought by persons alleging themselves to
be members of the State Board of Naturo-
pathic Examiners on behalf of such Board,
for themselves individually and on behalf
of 450 other persons alleged to be licensed
to practice naturopathy in this State. The
only relief sought was that the Act in ques-
tion be declared constitutional.

[1]. H.B. 69, Acts 51st Leg., Reg.Sess. 1949,
ch. 480, p. 890, as amended H.B. 365,
Acts 52nd Leg., Reg.Sess.1951, ch. 69, p.
114, as amended by H.B. 353, Acts 53rd
Leg., Reg.Sess.1953, ch. 343, p. 849.

The Attorney General has heretofore ruled this Act unconstitutional. Op. Atty. Gen. No. S–60 (1953).

The specific constitutional provision which the statute is alleged to violate is Sec. 31, Art. XVI, Texas Constitution, Vernon's Ann.St., which provides:

"The Legislature may pass laws prescribing the qualifications of practitioners of medicine in this State, and to punish persons for mal-practice, but no preference shall ever be given by law to any schools of medicine."

The validity of the statute is also attacked for vagueness. If vague it is invalid, as to its penal provisions, under Art. 6, V.A.P.C., and unconstitutional under Sec. 10, Art. I, of our Constitution. Ex parte Slaughter, 92 Tex.Cr.R. 212, 243 S. W. 478, 26 A.L.R. 891; Ex parte Meadows, 133 Tex.Cr.R. 292, 109 S.W.2d 1061. See 8 Tex.L.Rev. 253.

It is our opinion that the statute is invalid upon both grounds urged.

Art. 4510, V.A.C.S., in part provides:

"Any person shall be regarded as practicing medicine within the meaning of this law:

"(1) Who shall publicly profess to be a physician or surgeon and shall treat, or offer to treat, any disease or disorder, mental or physical, or any physical deformity or injury, by any system or method, or to effect cures thereof; (2) or who shall treat or offer to treat any disease or disorder, mental or physical or any physical deformity or injury by any system or method and to effect cures thereof and charge therefor, directly or indirectly, money or other compensation; * *."

Similar provisions have been incorporated in the Penal Code, Art. 741, V.A.P.C.

The statute in question, 4590d, defines the practice of naturopathy as follows:

"For the purpose of this Act, naturopathy and natureopathy shall be construed as synonymous terms, and the practice of naturopathy or natureopathy, is hereby defined as that philosophy and system of the healing art embracing prevention, diagnosis, and treatment of human ills and functions by the use of several properties of air, light, heat, cold, water, manipulation with the use of such substances, nutritional as are naturally found in and required by the body, excluding drugs, Surgery, X-ray and radium therapy, and the use of X-ray equipment.

"Nothing in this Act shall be construed to be authority for any naturopath, licensed hereunder, to practice medicine as defined by the laws regulating the practice of medicine in this State, Surgery, Dentistry, Osteopathy, Chiropractic, Christian Science, or any other treatment or system of treatment authorized for by law, nor shall the provisions of this Act in any way or manner apply to or affect the practice of Medicine, Surgery, Osteopathy, Christian Science, or any other treatment or system of treatment authorized and provided for by law for the prevention of human ills." (Sec. 18).[2]

It is obvious that the practice of medicine as defined by Art. 4510 supra, includes the practice of naturopathy as defined by the above statute.

It is also obvious that the practice of naturopathy as so defined is the practice of medicine as statutorily defined but limited

2. Section 5 of this Act provides in part: "Provided, however, no provisions of this Act shall be construed as repealing, modifying, or suspending the Medical Practice Act governing the issuances of licenses to physicians and surgeons, or as in any way lessening such requirements."

to certain means and excluding specific means.

■ Thus it is evident that while the naturopathy statute affirmatively authorizes a limited practice of medicine it also affirmatively denies that the statute shall have such effect.

We are uncertain as to which legislative path we should follow. This uncertainty, in our opinion, spells the death of the statute.

A similar question was before our Court of Criminal Appeals in Ex parte Halsted, 147 Tex.Cr.R. 453, 182 S.W.2d 479, 483. The Court there had under consideration the Chiropractic Act of 1943, Acts 1943, c. 359. This Act defined chiropractic as the science " * * * of analyzing and adjusting the articulations of the human spinal column, and its connecting tissues, without the use of drugs or surgery. * * *" The Act also provided that "chiropractic shall in no sense be construed or defined as treatment or attempted treatment of patients by use of surgery or medicine," but it provided that a chiropractor could treat disease by chiropractic.

The practice of medicine was defined in 1944, the date of Halsted, as now except for a proviso added in 1949 and not here applicable. The Court in a very strong and well reasoned opinion by its now Judge Davidson held the 1943 Chiropractic Act invalid. We quote his language:

"As thus construed, Sections 3 and 3a are in irreconcilable conflict, for, by the terms thereof, a chiropractor is both permitted to treat, and is prohibited from treating, patients for illnesses and diseases. He is both within and without the provisions of the Medical Practice Act defining the practice of medicine. Such being true, it is impossible, from the wording of the Act, to determine what is chiropractic and the practice thereof, or whether same is or is not the practice of medi-

cine, under the Medical Practice Act, as judicially determined."

Appellees place some reliance upon Baker v. State, 91 Tex.Cr.R. 521, 240 S.W. 924, 22 A.L.R. 1163 which sustained the validity of an Act defining and regulating the practice of optometry. This case was distinguished by the Court in Halsted on the ground, equally applicable here, that the optometrist by the Act was limited to the eye and to correcting defective vision. He was prohibited from treating the eye for disease and disorder as well as from practicing medicine.

It is our opinion that the Naturopathy Act attempts to both grant and deny to those complying with its terms the privilege of practicing medicine as that term is defined by the statutes of this State. It is, therefore impossible of interpretation and enforcement and is wholly void.

■ If the Act should be construed as authorizing, and not denying, the practice of medicine in a specialized field then it is void because violative of the preference provision of the Constitution set out above.

Art. 4501, V.A.C.S., provides, in part:

"All applicants for license to practice medicine in this State not otherwise licensed under the provisions of law must successfully pass an examination by the Board of Medical Examiners. The Board is authorized to adopt and enforce rules of procedure not inconsistent with the statutory requirements. Applicants to be eligible for examination must be citizens of the United States and must present satisfactory evidence to the Board that they are more than twenty-one (21) years of age, of good moral character, who have completed sixty (60) semester hours of college courses, other than in a medical school, which courses would be acceptable, at time of completing same, to the University of Texas for credit on a Bachelor of Arts

Degree or a Bachelor of Science Degree, and who are graduates of bona fide reputable medical schools; a reputable medical school shall maintain a course of instruction of not less than four (4) terms of eight (8) months each; shall give a course of instruction in the fundamental subjects named in Article 4503 of the Revised Civil Statutes of Texas of 1925, as amended by this Act; and shall have the necessary teaching force, and possess and utilize laboratories, equipment, and facilities for proper instruction in all of said subjects."

and Article 4503, V.A.C.S., provides, in part:

"Examinations shall be conducted on anatomy, physiology, chemistry, histology, pathology, bacteriology, diagnosis, surgery, obstetrics, gynecology, hygiene, and medical jurisprudence."

The Naturopathy Act, provides in part:

"It shall be the duty of the Board to examine applicants for license to practice naturopathy in this State; and the Board shall examine and grade all papers submitted by such applicants and report to such applicants within a reasonable time after the date of such examination, and said report shall give to each applicant the grades made by said applicant upon each and every subject upon which he or she was examined by such Board. Each person applying for examination shall pay to said Board a fee of Twenty-five Dollars ($25), and upon passing a satisfactory examination before said Board in such basic subjects as anatomy, including histology, physiology, chemistry, bacteriology, hygiene, public health and pathology and on diagnosis and subjects in the Arts and Sciences of Naturopathy which the Board may require, shall be granted a

license to practice naturopathy in this State. * * * [Sec. 8.]

"Sec. 9. Each applicant for a license to practice naturopathy in this State shall be not less than twenty-one (21) years of age, a citizen of the United States of America, and shall

"(a) present a diploma from a high school;

"(b) evidence of two (2) years of college work if graduated from a naturopathic college after January 1, 1954;

"(c) four (4) years of nine (9) months each in a reputable, nationally recognized naturopathic college, or a medical college, whose entrance requirements and courses of instruction are as high as those adopted by a better class of medical schools and naturopathic colleges of the United States of America;

"(d) each applicant must serve one (1) year of internship in some recognized hospital;

"(e) and must give evidence of being a person of good moral character."

Halsted, supra, is directly in point here also. We quote again from Judge Davidson's opinion:

"Under the Medical Practice Act, one desiring to practice medicine must possess certain qualifications as to character and educational attainments, art. 4501, R.C.S., and must pass a satisfactory examination upon certain basic subjects, art. 4503, R.C.S.

"Under the Act before us, one desiring to practice chiropractic must also possess certain qualifications of character and educational attainments, and must pass a satisfactory examination upon certain basic and special subjects. (Sec. 7 of the Act.)

"The educational qualifications for each are materially different. Those under the Medical Practice Act are decidedly more onerous. There is a direct difference between the subjects upon which the applicants must be examined. In fact, only four subjects are embraced in each examination. As to which is the more onerous, it is not for us to say. The fact remains that there is a material difference in the subjects embraced in the respective examinations. Assuming, then, that, under the Act before us, the legislature has set up, recognized, and defined chiropractic as a system, means, and method for the treatment of diseases and disorders of the human body, and that practitioners thereof are authorized to treat, by chiropractic, patients for diseases and disorders, it is evident that the legislature has preferred such science and such practitioners over all others engaged in doing the same thing, that is, in treating the human body for diseases and disorders, because the chiropractor is not required to have the same educational qualifications, nor is he required, as a condition precedent to his right to so treat patients, to pass a satisfactory examination upon the same subjects that are required of all others similarly situated.

"Thus a preference has been, by the legislature, accorded and extended the chiropractic system of the healing art, in violation of Art. 16, Sec. 31, of our State Constitution."

The differences between the requirements of the Medical Practice Act and those of the Naturopathic Act are apparent and substantial. It is equally apparent that the requirements of the Medical Act are more burdensome than those of the Naturopathy Act. It follows that an unconstitutional preference was attempted in favor of the latter school of medicine and that it is inoperative and void.

These conclusions dispense with the necessity of considering and determining other subordinate points presented by appellants.

The judgment of the Trial Court is reversed and judgment is here rendered declaring the Naturopathy Act, Art. 4590d V.A.C.S., void.