**Lorn L. HINISH**

v.

**STATE OF MARYLAND et al.**

**Civ. No. K-74-832.**

United States District Court,
D. Maryland.

March 26, 1975.

---

**54**

Lorn L. Hinish, pro se.

Francis B. Burch, Atty. Gen. of Maryland and Joel J. Rabin and Theodore Losin, Asst. Attys. Gen. of Maryland, Baltimore, Md., for defendants.

FRANK A. KAUFMAN, District Judge.

On November 17, 1972, plaintiff Lorn L. Hinish, a Maryland resident, was granted a full and final divorce from his wife, Hilda R. Hinish, by Judge James Macgill of the Circuit Court for Howard County. On June 19, 1973, Judge Macgill awarded custody over Lori, plaintiff's minor daughter, to the child's mother, granted plaintiff regular visitation rights, and required plaintiff to pay twenty-five dollars ($25.00) per week for child support to his estranged spouse. Noting plaintiff's emphasis on the fact that his former wife had been found to have been an adulteress in the prior divorce proceeding, Judge Macgill nonetheless concluded that "in most instances, on a day by day basis, a small girl must rely on her mother's affections and companionship, however devoted her father may be." Hinish v. Hinish, Equity No. 8253 (June 19, 1973) at 4.

In an unreported opinion dated January 14, 1974, the Court of Special Appeals of Maryland affirmed Judge Macgill's custody order. In response to plaintiff's claim that Judge Macgill had acted in disregard of Article 46 of Maryland's Declaration of Rights [1] in presuming the mother a "more fit custodian for a child of tender years", despite the fact that "no 'scientific evidence' [had been] offered * * * to overcome the 'even-handed application' of the requirements of Art. 46", the Court of Special Appeals observed "that appellant offered no 'scientific evidence' either", and indicated that Judge Macgill's custody award had been in its view properly "bottomed on the general rule of what is in the best interest of the

1. Maryland has ratified the proposed "Equal Rights Amendment" to the federal Constitution and has also included it as Article 46 in its own Declaration of Rights. The amendment, and Article 46, provide:

Equality of rights under the law shall not be abridged or denied because of sex.

child." Hinish v. Hinish, No. 368 (Jan. 14, 1974) at 5.

In a separate proceeding instituted after the Court of Special Appeals filed its opinion denying Hinish's appeal from Judge Macgill's child custody decision, but before Hinish filed the within case on August 2, 1974, a directed verdict was granted by Judge T. Hunt Mayfield sitting in the Circuit Court for Howard County to John A. Somers, the defendant in a suit instituted by Lorn L. Hinish as plaintiff. In that case Hinish charged Somers, the alleged former paramour and the current husband of the former Mrs. Hinish, with debauchery and carnal knowledge of Mrs. Hinish. Subsequent also to the Court of Special Appeals' affirmance of Judge Macgill's child custody decree, and also before the within case was commenced in this Court, the present Mrs. Somers commenced and prevailed in an action instituted in the Circuit Court for Howard County before Judge Macgill for specific performance of various provisions of a separation agreement which had been entered into by plaintiff and herself. Additionally, on January 3, 1974, plaintiff filed, in the Circuit Court for Howard County, in the original custody proceedings, a petition for change of custody, based upon the alleged mental instability of Somers. On July 18, 1974, Hinish requested Judge Macgill to submit that custody-change issue to a jury.

On August 2, 1974, Hinish, proceeding *pro se* and pursuant, *inter alia,* to 42 U. S.C. § 1983 and 28 U.S.C. § 1343, commenced this case in this Court, alleging that he has been denied equal protection of the law. Hinish asserts that the actions of the Maryland Courts; Judge Macgill; the Howard County Department of Social Services, an agency which was apparently asked by Judge Macgill to investigate the custody question, and which apparently recommended that custody of Lori be conferred upon Mrs. Hinish; and Governor Mandel, demonstrate a pattern of discrimination against him and against similarly situated males on the basis of their sex, and that the legal rationale underlying Judge Macgill's above custody award was constitutionally impermissible.

Hinish also alleges, in an extended and somewhat discursive memorandum of law filed in this case, that Judge Macgill and the Courts of the State of Maryland have chosen to ignore numerous mandates of their own law, including, but not limited to, Article 46 of Maryland's Declaration of Rights, and Md.Const. Art. XV, § 6, allegedly entitling Hinish to trial by jury in those child custody proceedings. That latter constitutional provision states:

> The right of trial by Jury of all issues of fact in civil proceedings in the several Courts of Law in this State, where the amount in controversy exceeds the sum of five hundred dollars, shall be inviolably preserved.

Plaintiff seeks a broad range of relief from this Court, including, *inter alia,* Orders by this Court directing Judge Macgill, the Social Services Department and/or Governor Mandel, to cease discriminating against Hinish; to vacate Judge Macgill's past Orders; to provide Hinish with written transcripts of any proceedings which could form the basis for a later contempt of court citation; to provide written opinions to accompany all Orders of the Circuit Court of Howard County; to afford Hinish trial by jury in any further custody proceedings; to protect Hinish against any judge, sitting without a jury, holding plaintiff in contempt of court; to require Judge Macgill to apologize to Hinish; and to require the Social Services Department of Howard County to assign experienced personnel to custody cases and also to require that Department to cease making recommendations to courts in connection with issues relating to child custody. Hinish also seeks "compensatory damages" in the amount of $750,000 from the State of Maryland, $250,000 from Judge Macgill, $1000 from Governor Mandel, and $100,000 from the Department of Social Services,

as well as punitive damages at this Court's discretion. `

■ All parties to this litigation appear to agree with this Court's conclusion that plaintiff's claims herein do not require the empaneling of a three-judge district court under 28 U.S.C. § 2281. Plaintiff's attacks herein are not upon a statute or administrative order, or the terms thereof, but rather upon the allegedly unlawful application of Maryland's Constitution and laws. Accordingly, 28 U.S.C. § 2281 *et seq.* are not applicable herein. *See* Query v. United States, 316 U.S. 486, 62 S.Ct. 1122, 86 L.Ed. 1616 (1942); Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); C. A. Wright, The Law of Federal Courts 189–90 (1970 ed.).

Defendants, noting, at the time this case was filed by Hinish in this Court, the pendency of state proceedings then before Judge Macgill, requested this Court to hold this case temporarily *sub curia* until such time as those then pending proceedings and appropriate appeals could be completed. Thereafter, on December 3, 1974, Judge Macgill, acting non-jury, filed a Memorandum (see Equity No. 8523) in which he declined to modify his prior custody award. On the basis of certain court-requested psychiatric evaluations and the recommendations of one or more social workers, Judge Macgill concluded that it was not in Lori's best interests to be removed from her mother's custody. Judge Macgill also determined that, in the interest of protecting Lori's emotional health, Mrs. Somers should arrange for psychiatric treatment for herself and for the child, and that, "as a condition to the exercise of his visitation privileges with Lori," (at p. 4) Hinish should also undergo such treatment. Judge Macgill made no reference to the jury trial or to the equal protection issues raised herein. Subsequently, Hinish filed an appeal from Judge Macgill's said decision to the Court of Special Appeals of Maryland. The Clerk's Office of that Court has informed this Court that oral argu-ment in connection with that appeal is presently scheduled for the month of May 1975.

■ This Court, in the exercise of its discretion, will grant defendants' motion to abstain and will hold this case temporarily *sub curia* until the instant state court proceedings have been fully consummated and the Maryland Courts have had the opportunity to speak to the sex discrimination and other issues Hinish has raised herein.

In Moye v. City of Raleigh, 503 F.2d 631 (4th Cir. 1974), involving a 1983 quest for injunctive relief and the award of damages, Judge Boreman wrote (at 634–35):

> * * * Plaintiff has not submitted his claim for money damages to the state court and he need not do so in order to invoke the jurisdiction of the federal courts. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Scott v. Vandiver, 476 F.2d 238 (4 Cir. 1973). However, it is clear that he has submitted many of the issues involved in this federal action for money damages to the state court by way of his defense to the pending state criminal prosecution. *Judicial economy and the sound exercise of judicial discretion require that federal courts abstain until the state court has had an adequate opportunity to resolve those issues.* We recognize that the decision of the state courts on those issues may be *res judicata* in this civil action. P I Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1 Cir. 1972); Norwood v. Parenteau, 228 F.2d 148 (8 Cir. 1955). But it is the plaintiff who chose to submit those issues to the state court and, having elected to try them there in the first instance, he cannot now be permitted to avoid his decision by initiating this action in federal court while the state action is pending. *See* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); *see also* Moran

v. Mitchell, 354 F.Supp. 86 (E.D.Va. 1973). [Emphasis added.]

In the absence of any claim by plaintiff that he will be prejudiced or damaged in the slightest by a decision by this Court to abstain, and in view of the fact that plaintiff has himself instituted the several state court proceedings dealing with the subject matter of this case, abstention, and retention of jurisdiction by this Court, *cf.* N. A. A. C. P. v. Button, 371 U.S. 415, 427–28, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963), until after the state court proceedings have been concluded, is clearly indicated. However, a few additional comments would appear appropriate at this time.

(1) In Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), plaintiff therein sought in a bill in equity filed in a United States District Court "to have a judgment of a circuit court in Indiana, which was affirmed by the Supreme Court of the state, declared null and void" as contravening the Due Process and Equal Protection Clauses of the Fourteenth Amendment and the Contract Clause of the Constitution. In affirming the District Court's dismissal of that action for want of jurisdiction, Mr. Justice Van Devanter wrote (at 415–16, 44 S.Ct. at 150):

It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the supreme court of the state on an appeal by the plaintiffs. * * * If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and

timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. * * * [Case citations omitted.] Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. * * * [Statutory citations omitted.] To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the district courts is strictly original. * * *

*See* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 414, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964); Brown v. Chastain, 416 F.2d 1012, 1013 (5th Cir. 1969), cert. denied, 397 U.S. 951, 90 S.Ct. 976, 25 L.Ed.2d 134 (1970); Resolute Insurance Co. v. North Carolina, 397 F.2d 586 (4th Cir.), cert. denied, 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (1968); Picking v. State Finance Corp., 332 F.Supp. 1399, 1403 (D.Md.), aff'd, 450 F.2d 881 (4th Cir. 1971), cert. denied sub nom. Picking v. Kaufman, 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972), and cases cited at 332 F.Supp. 1403, In this case, it is to be noted that Hinish did not institute the within case in this federal district court until after he had been a party to the previously commenced state cases discussed hereinabove, and has in no way *reserved,* in the manner made possible by England v. Louisiana State Board of Medical Examiners, *supra,* his rights to litigate in this Court the federal constitutional issues he raises herein. Accordingly, in the event that Hinish, after he has fully exhausted his rights in the Courts of the State of Maryland, continues to desire to have Judge Macgill's interpretation of Maryland's Equal Rights Amendment reviewed in a federal court, it may well be that his proper course will be to seek review in the Supreme Court of the United States pursuant to 28 U.S.C. § 1257. *See* 7B J. Moore, Federal Practice J. C. ¶ 1257 (2d ed. 1974); C. A. Wright, Law of Feder-

al Courts § 107, at pp. 491–92 (2d ed. 1970).

 If and when this Court should reach the merits of any of Hinish's contentions herein, certain of his claims must inevitably fail:

 (a) The State is not a proper defendant in a section 1983 proceeding. Williford v. People of California, 352 F. 2d 474, 476 (9th Cir. 1965); *see* Moor v. County of Alameda, 411 U.S. 693, 93 S. Ct. 1785, 36 L.Ed.2d 596 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

 (b) As a defendant in this 1983 suit, Judge Macgill will be entitled to dismissal of Hinish's quest for damages under the doctrine of judicial immunity. Pierson v. Ray, 386 U.S. 547, 553–55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). In referring to Judge Macgill's said entitlement, this Court expresses no views whatsoever at this time concerning the immunity, if any, of Governor Mandel, *see* Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and/or the Howard County Department of Social Services, *see* McCray v. Maryland, 456 F.2d 1 (4th Cir. 1972).

 Hinish has requested this Court to order defendants to respond to certain interrogatories filed with this Court on October 9, 1974. In view of this Court's decision to abstain, and in view of the possibility that further state court proceedings may render some or all of the answers to those interrogatories unnecessary, plaintiff's request is hereby denied.

Defendants' motion asking this Court to abstain from further proceedings until Hinish has exhausted his state remedies is hereby granted. This Court will so abstain. The Clerk is hereby directed to close this file at this time but to reopen it at any time Hinish so requests in view of this Court's continuing retention of jurisdiction in this case.[2]

2. In Moye v. City of Raleigh, *supra*, Judge Boreman noted (at 635):

Ordinarily in such cases we would remand the case to the district court so that it might retain jurisdiction over the claim for money damages pending the outcome of the state proceeding. However, it appears likely that the outcome of those proceedings will be controlling with respect to many of the issues involved in the claim for money damages and would necessitate extensive revision or amendment of the pleadings. Accordingly, we conclude that the action for damages should be dismissed without prejudice to the right of the plaintiff to institute a new action for damages should he be so advised.